Kenneth E. JAMES, Plaintiff–Appellee,

v.

NATIONAL BUSINESS SYSTEMS, INC., et al., Defendants–Appellants.

No. 90–1135.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1990.

Decided Feb. 11, 1991.

James P. Fenton, J. Michael O'Hara, Barrett &. McNagny, Fort Wayne, Ind., for plaintiff-appellee.

William T. Hopkins, Gallucci, Hopkins & Theisen, Fort Wayne, Ind., for defendants-appellants.

Before CUDAHY and POSNER, Circuit Judges, and WILL, Senior District Judge.[*]

POSNER, Circuit Judge.

The only question that remains, after a partial settlement of the litigation, is whether the district judge erred in finding that Kenneth James was a participant in a pension plan of his former employer, National Business Systems, Inc.—in which event the federal pension law entitles him, as the judge found, to $25,677.46 in plan benefits. Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*; 721 F.Supp. 169 (N.D.Ind.1989). NBS argues that there was no plan, or if there was one that James never enrolled in it.

In 1985 NBS, a Canadian firm, bought a data-processing division in Fort Wayne, Indiana from an American company and installed a management group headed by Vincent Tofany. Tofany hired James, initially as a consultant rather than as an employee, to help design a pension plan for key executives of NBS, both those in Canada and those in NBS's new division in Fort Wayne. By November 1986 a team that included James had worked out most of the details of the plan, including the amount of benefits, when they would vest, which executives would participate in the plan, and the method of funding the plan (insurance on the lives of the participants). The essence of the plan was that in the event of death before retirement at age 65, or retirement at that age, a participant (or his designated beneficiary) would receive, for ten years, the participant's salary as of January 1, 1987. (This would be a pension plan within the meaning of ERISA.) 29 U.S.C. §§ 1002(1)(B), (2)(A)(i). A member of the team wrote the executives who were to participate that the plan was "to come into effect January 1st 1987 or as soon thereafter as life insurance comes into effect." Tofany testified that the plan did come into effect on January 1, 1987. By that date, the six executives who were eligible to participate had scheduled physical examinations to determine their insurability, and later NBS began paying premiums on life insurance policies for them. These were whole-life policies, meaning that they had a savings as well as an insurance component, the former to fund the retirement benefits provided by the plan and the latter to fund the death benefits.

On August 1, 1987, James became employed by NBS as the personnel director of its Fort Wayne operation and moved to Fort Wayne to assume his duties. His employment contract stated among other things that he would be "immediately eligible for all benefits in effect for U.S. employees including the participation of Maryalice James [his wife] under the Group Medical and Dental Insurance Programs" and that "you shall be enrolled in the Executive Insurance Plan at a time selected by" the chief executive officer of NBS "and you shall participate in all future compensation programs designed for Senior Management personnel." James's salary was fixed at $90,800. This meant—since he was 57 years old—that if he worked for NBS until he was 65 and then retired, he would be entitled to receive $908,000 in pension benefits. But this is provided that the plan was "in effect" on August 1, 1987, when he began his employment with NBS, that the plan was not the "Executive Insurance Plan," and that the benefits conferred by the plan were comprehended within "all benefits in effect for U.S. employees" rather than "future compensation programs designed for Senior Management." The judge thought all three conditions satisfied, the reference to "Executive Insurance Plan" being merely

---

[*] Hon. Hubert L. Will, of the Northern District of   Illinois, sitting by designation.

to the life insurance that funded the retirement plan. As to that, James was never scheduled for a physical examination and never given an insurance application. NBS's president, already preoccupied with a financial scandal which was to rock the Fort Wayne division shortly, never selected a time for James to enroll in the Executive Insurance Plan.

James, though ultimately found not to have been implicated in the scandal, was fired on February 25, 1988, by which time only a small part of his benefits under the pension plan—if he had any benefits under the plan—if indeed there was a plan—had vested: the $25,000–odd dollars that the judge awarded him, a figure based on James's having completed (when he was fired) six months of the 97 months remaining before he reached the age of 65. Tofany has also sued NBS for benefits under the plan, and it is apparently the actual and threatened suits by Tofany and other senior executives for ERISA benefits that have prevented the parties to this suit from settling the ERISA claim along with James's other claims.

▪ ERISA rights and duties are limited to "established" plans, 29 U.S.C. § 1002(1), and here there never was a pension plan in a literal sense. But we have said, following the Eleventh Circuit's decision in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc), that while a plan is not established merely by the employer's deciding to *have* a plan, the plan need not be in writing, provided it is a "reality," which requires however that the court be able to determine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 1373; see *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738–39 (7th Cir.1986). But ascertainability can be only one criterion of whether a plan has been established. The other and prior criterion is that the plan was intended to be in effect, and not just be something for future adoption. And even if there is an established plan, it is a separate question

whether a given plaintiff was a participant in it.

▪ Tofany testified that the plan was in effect as of January 1, 1987, eight months before James became an employee. Tofany was of course an interested witness because he has his own suit going against NBS, and his testimony was contradicted by various documents that describe the plan as being tentative, contingent, *in futuro*, etc. On the other hand it was corroborated by the fact that the six executives initially eligible to participate had all gotten their insurance physicals by January 1, and the company paid the premiums on the insurance—the funding vehicle for the plan. And if the plan was in existence before James was hired, this would support, though certainly not compel, an inference that it was comprehended within the term "all benefits in effect for U.S. employees." A more natural reading, it is true, is that the term refers to company-wide benefits rather than to an esoteric benefit reserved for a handful of senior managers; but the plan could hardly have been a "future compensation program" if it was already in effect. A third possibility is that the plan *was* the Executive Insurance Plan. It is all very obscure; and though we have some doubts, we are not prepared to reverse the district judge's finding that there was a plan in effect when James was hired.

▪ But did he ever enroll in it? The judge found that the "Executive Insurance Plan" in which James, clearly, did *not* enroll was, although not the pension plan itself, the funding vehicle for the plan, rather than a separate employee benefit. NBS was unwilling to assume the necessarily uncertain liabilities entailed by the combination of a death and a retirement plan and wanted through insurance to translate those uncertain liabilities into a fixed obligation to the insurance company. The insurance company in turn wanted to know the health status of the plan participants before it insured their lives as part of the death-and-retirement plan. We are left wholly in the dark as to whether James could enroll in the plan without filling out the insurance application and taking a

physical examination. If he could not—if the Executive Insurance Plan is not as detachable from the pension plan as the judge's award of benefits presupposes—then James never enrolled in the pension plan and is not entitled to any benefits under it. The district judge did not discuss this vital issue. The case must therefore be remanded for further consideration.

VACATED AND REMANDED, WITH DIRECTIONS.