**David GUPTA, Plaintiff,**

v.

**FREIXENET, USA, INC., Defendant.**

No. 95 C 1161.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 11, 1995.

**560**

Thomas H. Stern, Dawn Marie Maxwell, Thomas H. Stern, P.C., Chicago, IL, for plaintiff.

Paul B. Holmes, Gwen V. Carroll, Caran L. Joseph, Coffield, Ungaretti and Harris, Chicago, IL, John P. Buckley, Coffield, Ungaretti & Harris, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

This case focuses on a dispute about disability benefits. Before the court are two motions: (1) Plaintiff David Gupta's ("Gupta") Motion to Remand and (2) Defendant Freixenet, USA, Inc.'s ("Freixenet") Motion to Dismiss Plaintiff's Complaint. For the following reasons, the motion to remand is denied and the motion to dismiss is granted as to Counts I and III with prejudice. Count II is dismissed without prejudice and leave to file an amended complaint on or before January 2, 1996.

### I. Background

Gupta filed this action alleging a mis-calculation of his long term disability benefits, a mis-determination that he was no longer entitled to benefits because of his disability, and breach of an oral employment agreement which extended his benefits. Gupta was Freixenet's employee. In order to provide Gupta with long term disability benefits, Freixenet contracted with Upper Midwest Employers Group Trusts ("Upper Midwest"), a group insurance trust. Through Upper Midwest, Freixenet provided Gupta with benefits from Principal Mutual Life Insurance Company ("Principal"), a group insurer. Gupta became disabled in 1990 and filed a disability claim with Freixenet.

■ Attached to the Complaint the court finds a partial copy of the booklet given to Freixenet's employees by Principal ("booklet"), describing Freixenet's program.[1] Gupta alleges that the booklet sets forth his monthly long term disability benefits as an amount equal to either 66% or 70 percent of Gupta's monthly compensation.

Gupta claims that, when he filed the claim with Freixenet, Freixenet's Director of Human Resources, C.M. Burns ("Burns"), told Gupta that he would receive approximately $4,400 per month (two-thirds of his $79,000 per year salary). Gupta's claim was approved. However, Gupta states that his approval letter from Principal stated that Gup-

---

**1.** Gupta does not dispute that the document attached to the motion to dismiss is a true copy of the entire booklet. The court will consider the entire booklet as part of the Complaint itself, because Gupta referred to that booklet, and because its terms are central to his claims. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429 (7th Cir.1993).

ta would receive only $3,000 per month in benefits.

After paying benefits for some time, Principal requested, and Gupta underwent, a medical exam. Subsequently, in July 1993, Principal sent Gupta a letter, stating that Gupta no longer met the definition of disabled under the program and that he therefore no longer qualified for benefits. Gupta asserts that the exam was so lacking in medical inquiry that it afforded an improper basis for terminating his benefits. Gupta alleges that his medical condition had not actually changed, and that the condition worsened at the end of 1994 (approximately seventeen months after he was first denied benefits). Freixenet terminated Gupta's employment as of February 1993. In July 1993, Principal ceased paying benefits to Gupta.

In Count I of the Complaint based on common law contract principles, Gupta requests recovery in an amount equal to the difference between the $3,000 per month paid and the $4,400 per month Gupta expected. Count II requests state law contract recovery of monthly payments from the time that Principal denied continuing coverage.

In Count III, Gupta states that, after he became disabled, he entered an oral employment contract in which Freixenet's senior executive officer stated that Gupta would receive $50,000 per year in disability payments and fully-paid medical coverage for Gupta and his family until Gupta reached age 65, and that Gupta would also receive a bonus already due to him in an amount of approximately $20,000. In exchange for these promises, Gupta agreed to do as much work as he was able during the period when his was disabled. Gupta states that he has fully performed and that Freixenet has only partially performed by temporarily paying disability and medical insurance. Freixenet never paid the $20,000 bonus. Gupta requests that the court award him the benefit of this oral bargain under state law.

In its motion to dismiss, Freixenet argues that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, preempts Gupta's claims for benefits and that the alleged oral contract constituted an invalid oral modification of an employee welfare benefit plan. In his response to the motion to dismiss, Gupta contends that Freixenet's program does not fall within the reach of ERISA preemption because it included benefits supplied through Upper Midwest. Finally, in its reply, Freixenet asserts that its use of Upper Midwest did not remove its program from ERISA's ambit and that, as alleged by Gupta, the program is an employee welfare benefit plan covered by ERISA. Freixenet also argues that, in consideration of the unambiguous terms of the plan documents, Gupta has failed to state a cause of action under ERISA.

## II. *Discussion*

■ In deciding a motion to dismiss, the court takes all well-pleaded factual allegations as true. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court also accepts as true all reasonable inferences which may be drawn from those allegations. *Triad Assoc., Inc. v. Robinson*, 10 F.3d 492, 495 (7th Cir.1993). The complaint need not specify the correct legal theory nor point to the right statute. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). The court must construe the pleadings liberally, and mere vagueness or lack of detail alone does not constitute sufficient grounds to dismiss a complaint. *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir. 1992).

### A. *Motion to Remand*

Freixenet removed this case based on diversity jurisdiction and ERISA preemption. Gupta did not object to the removal within the extended time for objection set by the court. (Doc. # 14); *See* 28 U.S.C. § 1447(c). Gupta's response to the removal contained simply a request for voluntary dismissal of Principal, the group insurer. In addition, Gupta concedes that this court would have diversity jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity and an amount in controversy in excess of $50,000. Because the court finds that it also has diversity jurisdiction under

ERISA, as discussed below, the motion to remand is denied.

## B. ERISA Preemption

█ ERISA provides extensive regulation of employee benefit plans. In doing so, ERISA expressly preempts state law claims relating to such plans. 29 U.S.C. § 1144(a). Section 1144(a) states that ERISA "shall supersede any and all State laws insofar as they, may now or hereafter relate to any employee benefit plan." *Id.* The Supreme Court has interpreted § 1144(a) preemption broadly, considering its language to be "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (finding that ERISA preempts all state laws which have a "connection with or reference to" employee benefit plans). Similarly, the Seventh Circuit has determined that ERISA "displaces all state laws 'within its sphere, even including ERISA's substantive requirements.'" *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1136 (7th Cir.1992) (quoting *Metropolitan Life Ins. Co. v. Mass,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)). ERISA preempts state law tort or contract claims that are essentially suits for benefits. *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989) (ERISA preempted participant's claims for fraud and breach of oral contract to modify pension plan).

█ In order to determine whether Gupta's claims are preempted, the court must first determine whether Freixenet's benefit program is a "welfare benefit plan" under ERISA's definition. Courts must construe the definition of "welfare benefit plan" broadly. *Brundage–Peterson v. Compcare Health Servs. Ins. Corp.,* 877 F.2d 509, 511 (7th Cir.1989). No single act necessarily establishes a plan. *See Diak v. Dwyer, Costello & Knox, P.C.,* 33 F.3d 809, 811 (7th Cir. 1994) (citing *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982)). The question of whether a plan exists is one of fact which must be answered while considering all surrounding circumstances from the perspective of a reasonable person. *James v. National*

*Bus. Sys., Inc.,* 924 F.2d 718, 720 (7th Cir. 1991).

█ ERISA will recognize a plan as a "welfare benefit plans" if it contains the following five elements:

(1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, ... or severance benefits, (5) to participants or their beneficiaries.

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 738 (7th Cir.1986). A plan exists where a reasonable person could determine the intended benefits and beneficiaries, the source of funding, and the procedures for obtaining benefits. *James,* 924 F.2d at 720. Delegation of plan administration does not preclude a finding that a welfare benefit plan was established or maintained by an employer. *See Brundage–Peterson v. Compcare Health Serv. Ins.,* 877 F.2d 509 (7th Cir.1989).

█ In the instant case, Gupta's own complaint alleges as follows (emphasis added):

Freixenet ... *provided* to its employees, including the Plaintiff Gupta, certain nonwage benefits including and specifically a *long term disability benefit....*

Compl. at 2 and 5;

That ... Freixenet, *in order to administer and fund* its long term disability program, contracted with ... Principal to provide long term group insurance as part as [sic] its planned employee *program.*

Compl. at 2;

Gupta filed a disability claim with ... Freixenet.

Compl. at 3 and 6;

Freixenet ... made disability payments to the Plaintiff.

Compl. at 7; and

Freixenet kept his medical insurance in full force and effect by paying the monthly premiums when due....

Compl. at 12.

The Complaint shows that the elements set forth in *Ed Miniat* are present here. First,

Gupta's own complaint titles Freixenet's benefit package a "program." Second, Gupta recognizes that Freixenet established and maintained the program. Third, Gupta states that Freixenet was his employer. Fourth, Gupta states that the program provided disability benefits, fifth, to Gupta, a covered participant.

In addition, Gupta provides other information which indicates that Freixenet established and maintained a welfare benefit plan. The Complaint states that Burns, Freixenet's administrator, personally advised Gupta as to the amount of benefits which he was entitled to receive. The disability claim form, attached to the Complaint as Exhibit 2, states that Freixenet paid 100% of Gupta's premium.

Furthermore, the booklet contains considerable other information indicating that Freixenet itself maintained the program. The booklet directs participants to contact the employer for information, assistance, and explanation of facts which form the basis for a request for review. Also, Freixenet had the power to terminate the plan, elect the effective date of a participant's coverage, and consult with participants ending employment about continuing coverage. Freixenet established the terms under which its employees had the right to purchase life insurance coverage.

The booklet itself contains a section entitled "Statement of Rights," which enumerates Gupta's rights under ERISA. That section specifically names ERISA. This indicates that, beyond behaving like an ERISA plan, Freixenet's program was actually designed as such.

Simply from the Complaint and its attached exhibits, a reasonable person could determine the intended benefits and beneficiaries, the source of funding, and the procedures for obtaining benefits. As such, Freixenet's program satisfies ERISA's statutory definition of a welfare benefit plan. Accordingly, it is preempted by ERISA's provisions.

▆▆▆ Nevertheless, Gupta states that Freixenet's plan falls under an exception to ERISA's preemption provisions. Gupta states that the plan eludes ERISA preemp-

tion because it acts through a group insurance trust, Upper Midwest. *See . Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208 (5th Cir.1980) (group insurance trusts alone are not ERISA plans). A group insurance trust itself is·not a plan because it merely conducts business like a mutual fund, collecting and forwarding payments from various small employers to larger insurers. *Id.*

However,· the *Taggart* case, cited by Gupta, addressed only the issue of whether the insurance trust itself constituted a plan, rather than a subscribing employer's comprehensive scheme of benefits. *See id. Taggart* does not hold that employers who subscribe to group insurance trusts cannot establish and maintain welfare benefit plans. *See Ed Miniat,* 805 F.2d at 739.

▆▆▆ Although group insurance trusts, standing alone, are not plans, employers who contract with group insurance trusts may establish welfare benefit plans in which the group insurance trusts provide the benefits. *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). Department of Labor regulations provide that a group insurance program is not a plan where there are no employer contributions, where employees voluntarily participate, where the employer does not endorse the program but only permits the insurer to promote the program and collects premiums, and where the employer receives no consideration other than basic administration costs. 29 C.F.R. § 2510.3–1(j). As set forth above, even if Freixenet did subscribe to a group insurance trust, Freixenet paid the premiums, endorsed the program, and was actively involved in the program's administration. Thus, the Complaint itself pleads facts establishing that Freixenet itself established and maintained a welfare benefit plan. Accordingly, ERISA completely preempts Gupta's claims.

### C. *Application of ERISA*

Gupta's state law claims need not be dismissed merely because they are preempted by ERISA, which is not addressed in the Complaint. Instead of questioning whether a complaint denotes the appropriate statute, the court should inquire· as to whether a

plaintiff can state a claim for relief upon any set of facts consistent with those set forth in the complaint. *Bartholet,* 953 F.2d at 1078. Gupta's state law claims may be re-characterized as ERISA claims. The Complaint in the instant case amounts to an attempt to claim benefits under § 502 of ERISA.[2]

In Count I, Gupta contends that he should have received $4,400, as opposed to $3,000 per month in disability payments. In Count II, Gupta alleges that those payments were terminated without valid reason. In Count III, Gupta claims damages based on the benefits he was to receive under the alleged oral contract with Freixenet.

■ Plan administrators abuse their discretion where they make benefit determinations based on clearly erroneous findings of fact. *See Bali v. Blue Cross & Blue Shield Ass'n,* 683 F.Supp. 1220 (N.D.Ill.), *aff'd* 873 F.2d 1043 (7th Cir.1988). Thus, Gupta can prevail in Counts I and II, where he disputes the plan administrators' findings, only if he can establish that those findings were clearly erroneous.[3]

■ Count I claims benefits in excess of $3,000 per month. Gupta does not state that he submitted proof of good health to Principal when applying for benefits or at any other time. Apparently, Gupta has failed to thoroughly read the portion of the booklet which unambiguously requires submission of proof of good health for benefits in excess of $3,000 per month. That provision states as follows:

Proof of good health will be required to place your insurance in force. The type and form of required proof will be determined by Us [Principal]. You will also need to file proof of good health:

—If ten or more Members are insured for Long Term Disability Insurance, to make effective any Benefit Payable amount if excess of $3,000. We will pay reasonable cost of proof required in this instance.

(Mot. to Dismiss Compl. Ex. A at 5). Gupta states that this provision merely means that "if ten or more members are insured for long-term disability insurance, to make effective Benefits payable amount in excess of $3,000.00, we (Principal) will pay the reasonable cost of proof required in this instance." (Pl.'s Mot. to Remand at 7). Apparently, Gupta failed to read the top of the page, which unequivocally states that proof of good health must be submitted in order to receive benefits in excess of $3,000 where ten or more members are insured.

Gupta does not dispute that ten or more members were insured under Freixenet's plan. Gupta has not pled that he complied with the proof of good health provision, which would entitle him to the benefit in excess of $3,000 per month, as he does not state that he submitted proof of good health at any time. As he was not entitled to more than $3,000 per month, Gupta cannot state a claim for recovery of more than that amount under ERISA. Thus, Count I is dismissed with prejudice.

The court also dismisses Count II. However, that count is dismissed without prejudice because Gupta has adequately pled an arbitrary and capricious termination of benefits and he might be able to amend his complaint to indicate that he exhausted his administrative remedies under the plan documents.

■ Generally, courts defer to the discretion of plan administrators in making benefit determinations, and courts will reverse those determinations only if they are arbitrary and capricious. *Patterson v. Caterpillar, Inc.,* 70 F.3d 503 (7th Cir.1995). To find that a decision was arbitrary and capricious, courts must be confident that the ad-

2. Section 502 of ERISA states in relevant part:
A civil action may be brought—
(1) by a participant ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan ...; (3) by a participant ... (A) to enjoin any practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

such violations or (ii) to enforce any provision of this title or the terms of the plan; ....
29 U.S.C. § 1132.

3. Again, as Gupta himself attached the plan booklet to the Complaint, that booklet is considered in evaluating the facts as alleged in that Complaint.

ministrators failed to consider significant information or that they seriously erred in evaluating the evidence determination. *Id.* Yet, Gupta has pled that the physical examination upon which Principal based its decision to terminate his benefits was "so short and so lacking in medical inquiry, based upon a reasonable degree of medical and scientific certainty, that it afforded an improper basis" for the termination of Gupta's benefits. (Compl. at 8). The court interprets this passage to allege arbitrary and capricious denial of benefits.

However, as Freixenet argues, Gupta fails to allege that he has exhausted his administrative remedies. Gupta does not address this argument in his response memorandum. Courts may dismiss ERISA claims for failure to exhaust internal plan remedies. *Smith v. Blue Cross & Blue Shield,* 959 F.2d 655, 658 (7th Cir.1992). The purpose of the exhaustion requirements is to prevent premature judicial intervention and to "enhance the ability of plan fiduciaries to expertly and efficiently manage their plans." *Powell v. AT & T Communications,* 938 F.2d 823, 826 (7th Cir.1991). Gupta does not plead facts showing exhaustion, nor does he plead facts showing that this case falls within an exception to exhaustion requirements. Because Gupta might be able to amend Count II to adequately plead exhaustion issues, Count II is dismissed without prejudice.

The court also dismisses Count III. ERISA was intended to preserve the integrity of welfare benefit plans by restricting enforceable benefits to the written terms of the plans, and disallowing oral modification. *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992); *see also Lister v. Stark,* 890 F.2d 941 (7th Cir. 1989). In *Lister,* a participant alleged that his employer induced him to return to work with an oral promise that, contrary to the written terms of the plan, the participant would receive pension benefits for the time

when he had not worked for the employer. *Lister,* 890 F.2d at 944. When the plaintiff left the employer a second time, he did not receive the additional promised benefits. *Id.* The Seventh Circuit refused to validate the oral plan modification and affirmed dismissal of the case. *Id.* at 946.

The rule prohibiting oral modification of ERISA plans applies in an action seeking benefits in excess of those provided by a welfare benefit plan. *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1077 (7th Cir. 1992). In the instant case, Gupta alleges that Freixenet orally promised to extend him benefits which reached beyond the terms of the plan (i.e., amounts greater than $3,000 per month plus continuing family medical insurance).[4]

Gupta has pled himself out of court. With his allegation that Freixenet's promise to extend his benefits was oral, Gupta "opened a trap door under his case, for ERISA does not allow oral variances" of welfare benefit plans. *Bartholet,* 953 F.2d at 1078. Accordingly, Count III is dismissed with prejudice.

Finally, Gupta asserts that the court must determine whether Freixenet breached its fiduciary duty to Gupta, as a plan participant. However, Counts I and II of the Complaint only request relief in the form of benefits due under the Plan. Count III requests only contractual damages. Gupta has not even attempted to state a claim for breach of fiduciary duty and the court will, therefore, not address the issue.

### III. Conclusion

In sum, the court dismisses Counts I and III with prejudice. Count II is dismissed without prejudice. If possible, Gupta may file an amended complaint which adequately pleads exhaustion issues on or before January 2, 1996. Thereafter, Count II will also be dismissed with prejudice. A dismissal with prejudice based on exhaustion require-

---

**4.** Gupta also states that Freixenet orally promised to pay him a bonus, which Freixenet already owed Gupta, in the amount of approximately $20,000. Gupta may have a state claim for breach of the employment contract under which Gupta was originally due the $20,000. However, Gupta does not make such a claim. He requests enforcement of a subsequent oral agreement. That promise was merely an affirmation of a pre-existing duty, which alone does not give rise to a separate contractual obligation. *See Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 776 F.2d 198, 208 (7th Cir.1985).

ments will not alone bar a subsequent filing of a similar action once Gupta exhausts his administrative remedies. *Wilczynski v. Kemper Nat'l. Ins. Cos.,* No. 94 C 3146, 1995 WL 437503 (N.D.Ill. July 21, 1995) (Norgle, J.).

IT IS SO ORDERED.