**Fran GAIK, Plaintiff,**

v.

**·The TRAVELERS INSURANCE COMPANY, et al., Defendants.**

**No. 95 C 1682.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 12, 1996.

---

Nicholas Frank Esposito, Terence Michael Heuel, Mark A. Schramm, Daniel E. Panek, Esposito, Heuel & Schramm, Chicago, IL, for plaintiff, Fran Gaik.

Shayle P. Fox, Steven L. Gillman, Lynn Urkov Thorpe, Fox and Grove, Chartered, Chicago, IL, Steven H. Kuh, Steven H. Kuh, P.C., Chicago, IL, for defendant, Travelers Companies.

Shayle P. Fox, Steven L. Gillman, Kalvin M. Grove, Lynn Urkov Thorpe, Fox and Grove, Chartered, Chicago, IL, Steven H. Kuh, Steven H. Kuh, P.C., Chicago, IL, for defendant Travelers Telebrokerage, Inc.

Kalvin M. Grove, Fox and Grove, Chartered, Chicago, IL, for defendant Travelers Ins. Co.

Steven L. Gillman, Kalvin M. Grove, Lynn Urkov Thorpe, Fox and Grove, Chartered, Chicago, IL, for defendant MetraHealth Ins. Co.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff Fran Gaik and her husband Casey owned and operated Insurance Benefits Administrators, Inc., ("IBA") from 1975 to 1991. In 1991, the Travelers Insurance Company ("TIC") bought IBA and renamed it the Travelers Telebrokerage, Inc. ("TTB"). TTB retained Fran as Vice President of Operations and Casey as President. TTB maintained the same benefits package as IBA and even used the same benefits handbook (after adding a new cover). IBA never had a severance plan in place for any of its employees, and none of the approximately seventy-five employees laid off in connection with TIC's acquisition received any severance.

Fran and Casey were employed by TTB from 1991 to January, 1995. During this time, Fran took on increasing responsibilities and received commensurate pay increases. Fran performed some of her new responsibilities on behalf of TIC, and she received a TIC title to accompany her new role. However, at all times Fran remained solely on the payroll of TTB and received TTB's benefits. TTB employee benefits differed substantially from those of TIC. TIC's benefits were described in "Your Travelers Passport Benefits Handbook," which was updated regularly. According to numerous TIC documents, including "Passport '94," severance benefits were available to

> any officer or manager with a Company pay code of 30, 31 or 32 who is regularly employed on a full-time salaried basis and who is on a U.S. dollar payroll of a participating Company.

"Participating companies" were listed in Appendix A and included TIC and three of its wholly owned subsidiaries (Travelers Life and Annuity Company, Center for Corporate Health, Inc., and Travelers Health Network). TIC subsidiaries not on the list were TTB and U.S. Behavioral Health.

The plan also describes the formula for calculating benefits for those who were eligible.

> An Employee who is deemed eligible for benefits under the Plan shall be paid two weeks salary for each year of continuous

service completed with the Company, subject to a maximum of 52 weeks salary for 26 or more years of continuous service. "The Company" is defined as "The Travelers Corporation and its affiliates as set forth in Appendix A."

Plaintiff was terminated on January 13, 1995 (effective January 31, 1995) shortly after TIC merged with Metropolitan Life Insurance Company, forming MetraHealth. Both before and during the merger process, MetraHealth distributed memos and newsletters to its employees clarifying various aspects of the transition process. These documents repeatedly explained that it would take approximately one year to integrate the two companies fully and to create a single pay and benefits system. Until that time, employees would remain on the payrolls of their previous companies and would be entitled to the same benefits packages as they had previously enjoyed.

During her termination interview, plaintiff communicated the fact that she believed herself to be entitled to, among other things, one hundred weeks of severance benefits (four weeks per year multiplied over twenty-five years). The benefits were denied. On March 7, 1995, Paul Eddy, counsel for TIC, wrote plaintiff a letter in which he explained that her request for benefits was denied because, although TTB management had expressed a desire to implement a severance plan, no severance plan was in place at TTB. Furthermore, TTB was not a participating employer in the TIC plan. He closed the letter with an invitation for plaintiff to contact him should she have any questions, a desire for further discussion, or a willingness to settle her outstanding claims in exchange for a release. Plaintiff responded with a letter to the effect that she had little interest in discussion and had already filed lawsuits.

In the case before this court, plaintiff claims that she is entitled to severance benefits under one of two theories. First, she claims that she should receive severance under the TIC Plan because much of the work she did was for TIC (a "participating employer" under the plan). Second, she asserts that TTB did have a severance plan in place (TTB either adopted the TIC plan or created its own). Defendant has moved for summary judgment on all theories. Summary judgment for defendant will be granted.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, then summary judgment must be entered in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A mere scintilla of evidence supporting a position will not suffice, *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991), nor will "self-serving statements," unsupported by affidavits or other evidence. *Seward v. B.O.C. Div. of General Motors Corp.*, 805 F.Supp. 623, 631–32 (N.D.Ill.1992). Rather, a "reasonable jury" must be able to render a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### *The TIC Plan*

Plaintiff claims that she is entitled to benefits under the TIC Plan. Defendant counters with two arguments in the motion for summary judgment: 1) that plaintiff is not a beneficiary under the terms of the plan and 2) even if plaintiff were entitled to benefits, she failed to exhaust her administrative remedies.

As defendant correctly points out, a plaintiff's failure to exhaust her administrative remedies is usually fatal to her suit. Furthermore, the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion. *Powell v. AT & T Communications, Inc.*, 938 F.2d 823, 825 (7th Cir.1991).

In response to the accusation that she failed to exhaust her administrative remedies, plaintiff contends that she was unaware of the existence of any such remedies. Plaintiff proffers no legal authority to support her

assertion that ignorance is an excuse. Usually, "a litigant who fails to press a point by supporting it with pertinent authority, or by showing it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Sullivan v. J.S. Sales Plumbing, Inc.*, 1994 WL 55658, *1 (N.D.Ill.), *citing Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). In order to reach a correct resolution of the summary judgment motion, however, this court has explored the parameters of the exhaustion requirement to determine whether plaintiff's protestations of ignorance create an exception.

■ There are few recognized exceptions to the exhaustion requirements under ERISA. A plaintiff need not exhaust her administrative remedies if to do so would be futile, if she was threatened with irreparable harm, or if she was denied meaningful access to the plan's administrative procedures. *Brown v. Continental Baking Co.*, 891 F.Supp. 238, 241 (E.D.Pa.1995). This court can only speculate that plaintiff seeks to invoke the third of these exceptions, namely, that she was denied meaningful access to the administrative procedures.

■ Under the federal ERISA statute, an employee benefit plan must

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. According to the regulations supporting ERISA, the notice of denial must include:

(1) The specific reason or reasons for the denial;

(2) Specific references to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f) (1994). When a plan administrator in control of the available review procedures denies a claimant meaningful access to these procedures, the district court has the discretion not to require exhaustion. *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 847 (11th Cir.1990). Indeed, it has been suggested that a district court would be obliged to exercise its jurisdiction and would be guilty of an abuse of discretion if it did not. *Id., citing Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980).

However, the language of ERISA indicates that this duty of disclosure is owed only to plan "participants" or "beneficiaries." Another section of ERISA requires plan administrators to furnish plan summaries and other relevant information upon the written request of "any participant or beneficiary." 29 U.S.C. § 1024(b)(4). Case law has established that this language does not give rise to a duty to disclose information to persons who make such requests but are deemed to be non-participants or non-beneficiaries. *See Anderson v. Flexel*, 47 F.3d 243, 249 (7th Cir.1995) (a plan is not required by § 1024(b)(4) of ERISA to provide information to persons who are neither participants nor beneficiaries); *see also Dehner v. Kansas City Southern Industries, Inc.*, 713 F.Supp. 1397, 1403 (D.Kan.1989) (plan administrator had no duty to provide documents regarding a plan for which plaintiffs were not beneficiaries despite plaintiffs' attempts to "muddy the lines" between the legally distinct but related parent and subsidiary corporations).

Thus, whether defendant had a duty to provide plaintiff with details of the plan, and whether the neglect of such duty excuses plaintiff from her failure to pursue an administrative remedy, turns on whether plaintiff was, in fact, a "participant" in the TIC severance plan. She was not.

The plan itself provides a clear and careful definition of eligible employees. Plaintiff does not fit the criteria because she was never on the payroll of a participating company listed in Appendix A. The clear terms of the plan must control. *See* 29 U.S.C. § 1104(a)(1)(D) (instructing fiduciaries to administer plans "in accordance with the documents and instruments governing the plan[s]"); *see also McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665 (7th Cir.1993) (the plan must be administered according to its terms); *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991) ("ERISA instructs courts to enforce strictly the terms of the plans").

■ Under the terms of the plan, plaintiff is not eligible for severance benefits. Severance benefits are available only to those employees on the payroll of a participating company. TTB is not and was never a participating company. It is undisputed that plaintiff was always paid from the payroll account of TTB.

Plaintiff urges the court to ignore the plain language of the plan and to find her eligible for severance benefits because some of the work she did was for TIC, which was a participating company under the plan. In support of this argument, plaintiff describes, among other things, how much of her work was performed for TIC and how her increased responsibilities for TIC resulted in a new title and a raise. Plaintiff accordingly urges the court to determine that, although she was paid from the payroll account of TTB, she was really "on the payroll" of TIC.

■ There is simply no legal support for this conclusion. Plaintiff cites no case law to support her proposition that being "on the payroll of a company" is distinguishable from being "paid out of the payroll account of a company." It is possible that plaintiff is relying on some state law approach to determining employee status according to an employee's duties. However, ERISA preempts state law and ERISA requires application of the plan according to its terms. *See Gupta v. Freixenet, USA, Inc.*, 908 F.Supp. 557, 562 (N.D.Ill.1995) (ERISA preemption of state law relating to benefit plans is "deliberately expansive").

■ Plaintiff also argues that the terms of the plan are "ambiguous" and that the introduction of extrinsic evidence is therefore necessary for clarification of its terms. ERISA requires us to apply federal common law rules of contract interpretation when interpreting the terms of a policy. *Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429, 431 (7th Cir.1994). On a motion for summary judgment requiring the interpretation of a contract, the court must determine (1) if the contract is ambiguous or unambiguous and (2) if it is ambiguous, whether after consideration of the extrinsic evidence, there are any triable issues of fact. *Krawczyk v. Harnischfeger*, 869 F.Supp. 613, 622 (E.D.Wis.1994).

■ Plaintiff excises small portions of the plan and argues that they are susceptible to multiple, and therefore confusing, interpretations. However, ERISA plans must be interpreted in an ordinary and popular sense as if by a person of average intelligence and experience. *Bullwinkel*, 18 F.3d at 431. When read as a whole, without any biases, the plan reveals itself as an extremely straightforward piece of writing which would be clear to the average reader.

Furthermore, plaintiff has not provided any extrinsic evidence which would indicate that the plan was intended or construed to apply to any employee other than those who were paid out of the payroll accounts of the participating companies. TIC has consistently applied the plan only to those employees who were on the payrolls of the companies listed in Appendix A. Accordingly, plaintiff is not entitled to severance under the TIC Plan.

### TTB's Severance Plan

Plaintiff also urges the court to find that TTB adopted a severance plan for its own employees. According to plaintiff, this plan might be the TIC Plan or it might be one which is unique to TTB. Under either approach, plaintiff cannot prevail.

Plaintiff asks the court to analogize the instant case to that of *Dwyer v. Galen Hospital of Illinois, Inc.*, 1996 U.S.Dist. LEXIS 2921, 1996 WL 111886 (N.D.Ill.). However,

the two cases bear little resemblance to one another. In *Dwyer*, Humana purchased Michael Reese, an employer with a severance policy in place for its employees. *Id.* at *3. The purchase agreement specified that Humana would not assume liability for the severance pay plan and that Michael Reese should make arrangements to terminate its employee benefit plans as soon as possible. *Id.* at *4. However, the cancellation of the ·plan was never communicated to the employees. *Id.* at *6–8. Despite the fact that Humana updated the benefits plan (and the employee handbook) on several occasions, none of the modifications addressed the purported termination of the severance plan. *Id.* at *8. Furthermore, shortly before closing the sale, handouts were distributed to employees which stated that employees would retain "any benefits for which they are currently eligible." *Id.* at *7. The court found that Humana's complete failure to take any active steps to terminate the plan or notify employees of a change in benefits, along with Humana's misleading representations about the retention of benefits, meant that Humana could be held liable for severance payments as if it had affirmatively adopted the plan. *Id.* at *37.

 In the instant case, neither TTB nor its predecessor IBA ever had a severance plan in place. Although the record demonstrates that there was some confusion among certain members of TTB and TIC management regarding the adoption of a severance plan by TTB, mere confusion is not enough to establish that TTB adopted the TIC Plan. Plaintiff directs the court's attention to various documents which she claims reflect a decision to adopt the TIC Plan, but these memos at best express a hope or an intention to adopt the plan. Several of the memos were clearly directed only to beneficiaries of the TIC Plan and have no relevance to TTB employees. In *Dwyer*, a specific plan was already in place and the resulting miscommunication by Humana resulted in a failure to terminate the plan effectively. In the instant case, such confusion is not sufficient to establish that TTB adopted a plan. There is no record of action by the Boards of Directors of either TIC or TTB adopting such a plan, and employees of TTB were not notified of

any such adoption. Appendix A of the TIC Plan was never amended to include TTB and TTB employees who were terminated around the same time as plaintiff were not given severance benefits based on the TIC formula. Much of plaintiff's confusion is generated by her own and her husband's misinterpretation of memos clearly intended for the TIC employees whom they also managed. Plaintiff's wishes to the contrary, a reasonable jury could not find from this evidence that TTB adopted the TIC Plan.

Plaintiff also directs the court's attention to several documents which she claims establish that TTB set up its own severance plan. Plaintiff points out that four TTB employees who were terminated between 1993 and 1995 received severance benefits. Plaintiff has failed, however, to establish the existence of a determinable plan.

 A plan need not be in writing, but it must exist in reality and must be more than a mere decision to extend benefits. *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811 (7th Cir.1994). Plaintiff must also establish more than just an intention by an employer to adopt a plan; the plan must in fact be in place. *James v. National Business Systems, Inc.*, 924 F.2d 718 (7th Cir. 1991). To determine whether an actual plan exists, the Seventh Circuit has adopted the test set out in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982). A reasonable person must be able to determine from the surrounding circumstances the intended benefits, beneficiaries, source of financing and procedures for receiving benefits. *Diak*, 33 F.3d at 812.

Plaintiff has failed to articulate the terms of the purported TTB severance plan. It is true that four TTB employees were granted severance pay, but all four determinations of severance benefits were made on an individual basis. Some employees were required to sign a release in exchange for the payment while others were not. One employee was offered an extra incentive to stay and help the company through a transitional time before leaving. The four employees were paid vastly different amounts of money which cannot be reconciled to a single formula.

 The facts in the instant case are most closely analogous to the facts in *Diak*,

the plaintiff was unable to articulate the intended beneficiaries of the plan, the procedures for obtaining benefits, or the formula used to calculate benefits. *Id.* at 812–13. In *Diak*, the court held that the defendant's ad hoc provision of pension benefits to certain employees did not constitute a "plan" within the meaning of ERISA. *Id.* Likewise, defendant's unique and individual severance arrangements with four employees is insufficient to support a claim that defendant established a severance plan, and plaintiff's claim that she is entitled to benefits under the "plan" must therefore fail.

Finally, plaintiff argues that MetraHealth is also liable to her for severance benefits. Plaintiff's argument here is identical to her argument that TTB adopted the TIC Plan, and it fails for the same reasons. During the merger process, MetraHealth distributed memos to employees which indicated that benefits, including severance, would continue to be determined according to terms of the existing plans of Metropolitan Life and TIC until MetraHealth could implement its own plans. Since plaintiff was never eligible for severance under the TIC Plan and TTB did not adopt its own plan, MetraHealth's short-term adoption of existing plans does not entitle plaintiff to benefits from MetraHealth. There is one memo from MetraHealth which states that terminated employees will be given severance. This single memo fails to qualify this statement with a reference to existing TIC and Metropolitan Life plans. This one memo, when viewed in the context of all the more specific memos and newsletters which were also circulated, is not enough to establish the proposition that MetraHealth created an additional severance plan which would apply to plaintiff.

ORDER: Defendant's motion for summary judgment is granted. Judgment for defendant Travelers Insurance Company, et al., and against plaintiff Fran Gaik shall be set forth in a separate document and entered pursuant to Federal Rules of Civil Procedure 58 and 79(a).