**Frank STOFFELS, on behalf of the SBC TELEPHONE CONCESSION PLAN and all other persons similarly situated, Plaintiffs,**

v.

**SBC COMMUNICATIONS, INC., and The SBC Telephone Concession Plan, Defendants.**

**Civil Action No. SA–05–CA–0233–WWJ.**

United States District Court,
W.D. Texas,
San Antonio Division.

May 21, 2008.

---

**19.** *See Weinstein v. Bradford,* 423 U.S. 147, 148, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

**20.** *Bayou Liberty,* 217 F.3d at 398.

**21.** *Id.*

**22.** *Id.* at 399.

R. Joseph Barton and Michelle Yau of Cohen Milstein Hausfeld & Toll, P.L.L.C., Washington D.C., Marc I. Machiz of Cohen Milstein Hausfeld & Toll, P.L.L.C., Philadelphia, PA, and M. Renea Hicks Austin, TX, for Plaintiffs.

John L. Carter, Logan E. Johnson and Stacey Vu of Vinson & Elkins, Houston TX, for Defendant.

## MEMORANDUM OPINION

WILLIAM WAYNE JUSTICE, Senior District Judge.

This is a civil enforcement action brought under sections 502(a)(1)(B), (a)(2), (a)(3), and (c)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(2), (a)(3), and (c)(3) concerning Defendant SBC Communications, Inc.'s ("SBC") management of an alleged "defined benefit" retirement plan known as "Concession."

*Procedural History*

Plaintiffs filed their amended complaint July 18, 2005. Defendant filed a Motion to Dismiss (Docket No. 14), which this Court denied. (Docket No. 32.) On April 4, 2007, the Court granted Plaintiffs' Motion to Bifurcate the Case. (Docket No. 108.) Pursuant to the Court's order, Phase 1 of the litigation focuses solely on the question of whether the Telephone Concession is an ERISA pension plan. Plaintiffs contend that the Telephone Concession is an ERISA plan. Defendant denies that Concession is an ERISA plan. After completing discovery, Defendant filed a Motion for Summary Judgment (Docket No. 210), which the Court denied. (Docket No. 284.)

On November 26, 2007, the Court empaneled an advisory jury and held a trial on the question of whether the Concession is an "employee benefit plan" within the meaning of ERISA.

The Court presented five questions to the jury: (1) Was the Concession either a plan, fund, or program? (2) Did Defendant maintain the plan, fund, or program? (3) At any time after January 2000, did Defendant act as an employer in maintaining such plan, fund, or program? (4) Was the Concession plan, fund, or program designed with the purpose of providing "retirement income" to any Out-of Region (OOR) retirees who worked at Defendant's subsidiaries? (5) Did the OOR Retiree Concession plan, fund, or program result in the deferral of income by employees?

The jury answered the first three questions in the affirmative and answered the fifth question in the negative. The jury was unable to reach a verdict on the fourth question. Though the Court has the benefit of the advisory verdict, Federal Rule of Civil Procedure 52(a) requires that the Court "find the facts specially and state its conclusions of law separately." *See also Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114 (5th Cir.1973) (explaining that when a trial judge empanels an advisory jury, he or she must still enter findings of fact and conclusions of law). The Court enters the following findings of fact and conclusions of law.

*Plaintiffs*

The named Plaintiffs in this class action lawsuit are all individuals who worked for SBC or an SBC subsidiary. Plaintiff James Belcher is a retiree of Illinois Bell (a subsidiary of Ameritech Corporation), which is now a subsidiary of AT & T. (JS ¶ 1.) Plaintiff Belcher was employed by Illinois Dell from August 1956 through April 1982 and retired with a Service Pension in 1982. *Id.* Plaintiff Burnie Joe Dunn is a retiree of Southwestern Bell Telephone Co., which is now a subsidiary of AT & T. (JS ¶ 2.) Plaintiff Dunn was an employee of Southwestern Bell Telephone Co. from August 3, 1959 through December 31, 1990 and retired with a Service Pension in 1990. *Id.* Plaintiff Jack Giuliani is a retiree of Pacific Bell Telephone Co., which is now a subsidiary of AT & T. (JS ¶ 3.) Plaintiff Giuliani was employed by Pacific Bell Telephone Co. from 1962 through 1992 and retired with a Service Pension in 1992. *Id.* Plaintiff Frank E. Stoffels is a retiree of Pacific Bell Telephone Co., which is now a subsidiary of AT & T. (JS ¶ 5.) Plaintiff Stoffels was an employee of Pacific Bell from 1970 to 1996, and retired in 1996 with a disability pension. *Id.* Plaintiff Linda Villafane retired from Illinois Bell (a subsidiary of Ameritech Corporation) on January 31, 2001. (JS ¶ 6.) Plaintiff Villafane was employed by Illinois Bell from 1971 until her retirement. *Id.*

*Defendant*

Prior to 1984, American Telephone & Telegraph Co. ("Bell") was the parent corporation of the "Bell System," which through various subsidiaries and affiliated entities controlled over 80% of all U.S. telephones, over 98% of all long distance telephone lines in the United States and manufactured over 90% of all U.S. telephone equipment. (JS ¶ II.6.) A federal court ordered the divestiture of Bell and its regional operating companies, known as the Regional Bell Operating Companies ("RBOC's"), effective January 1, 1984. (JS ¶ II.7.) The RBOC's were: (1) Ameritech Corporation, (2) Bell Atlantic (now Verizon), (3) BellSouth Corporation, (4) NYNEX (now Verizon), (5) Pacific Telesis Group ("PTG"), (6) Southwestern Bell Telephone ("SWBT"), and (7) U.S. West (now Qwest). *Id.*

In 1995, SBC Communications, Inc. was established as a holding company for

Southwestern Bell Telephone Company, which provides telephone service in Arkansas, Kansas, Missouri, Oklahoma, and Texas. (JS ¶ II.8.) SBC Communications, Inc. acquired the following companies on the following dates: In 1997, SBC acquired Pacific Telesis Group, which was the parent company to Pacific Bell Telephone Company and provides telephone service in California, and Nevada Bell Telephone Company, which provides telephone service in Nevada; in 1998, SBC acquired Southern New England Telecommunications Corporation, which was the parent company to The Southern New England Telephone Company and provides telephone service in Connecticut; and in 1999, SBC acquired Ameritech Corporation, which was the parent company to Illinois Bell Telephone Company and provides telephone service in Illinois, Indiana Bell Telephone Company, which provides telephone service in Indiana, Michigan Bell Telephone Company, which provides telephone service in Michigan, Ohio Bell Telephone Company, which provides telephone service in Ohio, and Wisconsin Bell, Inc., which provides telephone service in Wisconsin. (JS ¶ 9.) In 2005, SBC Communications Inc. acquired Bell and changed its name to AT & T Inc. ("AT & T"). (JS ¶ 10.) Prior to its acquisition of BellSouth Corporation, SBC (n/k/a AT & T) was organized into the following regions, which generally correspond to the following service areas:

West: California and Nevada

East: Connecticut

Southwest: Arkansas, Kansas, Missouri, Oklahoma, and Texas

Midwest: Illinois, Indiana, Michigan, Ohio, and Wisconsin.

---

1. The following SBC regions generally correspond to the Service Areas covered by the Bell Operating Companies ("BOCs")s: West corresponds to Pacific Telesis (PTG); East corresponds to SNET; Southwest corresponds to SWBT; Midwest corresponds to Ameritech. (*See* Pl. Ex. 481; Jury Instr. 13.)

(JS ¶ 12.)[1] To avoid confusion, the term "Defendant" as used in this memorandum opinion refers to SBC Communications, Inc, n/k/a AT & T. The terms "Telephone Concession" and "Concession" refer to the plan or program of benefits allegedly promised by SBC to its out-of-region retirees.

### *Concession*

#### *Background*

Concession is a "long-standing employee benefit." (Pl. Ex. 166, Tr. 684 (Karen Jennings noted that Concession "has been a long, time-honored tradition in our company").) AT & T had, at least as early as July 1963, provided its employees and retirees free and discounted telephone services. (Def. Proposed Findings of Fact ¶ 1.) Concession for Out–Of–Region (OOR) Employees and Retirees, who did not have access to AT & T services, consisted of reimbursements for the cost of purchasing phone service from local carriers. *Id.* When AT & T divested in 1984, the newly-independent RBOC's agreed that "each eligible pre-divestiture retiree will continue to receive a comparable level of telephone concession that he or she received immediately prior to divestiture." (Pl. Ex. 7, 8, 9.) The RBOC's also agreed to provide Concession to post-divestiture retirees. (*See, e.g.,* Pl. Ex. 172 at SBC 22660–61, Letter from C.L. Wade of Pacific Bell Division Staff to Retirees re: Outline of the New Concession Program, dated April 1984; Pl.Ex. 171 at SBC 23627–28, Letter from Vice President–Personnel of Ohio Bell to Retirees re: Changes Due to Ohio Bell Being Divested from AT & T, dated January 9, 1984.)

In the 1990s, each of the RBOC's (before they were acquired by SBC) adopted "grandfathering provisions" that eliminated the OOR telephone concession for new hires but "grandfathered" any existing employees or retirees who were already receiving OOR telephone concession. (*See, e.g.*, Tr. 623, 193–94, 322–23.) After these companies were acquired by SBC, the SBC Companies whose OOR Employees were eligible to receive a Telephone Concession after retirement were referred to as the "Participating Companies." (*See* Tr. 289–90; Pl. Ex. 47 at SBC 48533–48.) By 2000, the "participating companies and eligible affiliates" from which OOR employees were eligible to receive Concession after retirement were:

*Southwest Region:* Southwestern Bell Telephone Company; SBC Asset Management, Inc.; SBC Management Services, Inc.; SBC Technology Resources, Inc.; SBC International, Inc.; SBC Operations, Inc.; Southwestern Bell Messaging Services, Inc.; SBC Advanced Solutions, Inc.; SBC Telecom, Inc. (SBCTI–SWBT); SBC Services, Inc.; SBC Board of Directors; Southwestern Bell Telecom/CSI, and SBC Management Services USA, Inc. (JS ¶ 15.)

*Pacific Region:* Pacific Bell Telephone Company; Nevada Bell Telephone Company; Pacific Bell Directory; Southwestern Bell Video Services, Inc. (d/b/a Pacific Bell Home Entertainment); SBC Advanced Solutions, Inc.; SBC Services, Inc.; Pacific Bell Information Services, Inc. (other than CCO bargained-for employees); Pacific Telesis Group; Pacific Telesis Shared Services; SBC Telecom, Inc. (SBCTI–PB); and SBC Management Services USA, Inc. (JS ¶ 16.)

*Southern New England Telephone (SNET):* The Southern New England Telephone Company; SNET America, Inc.; SNET Diversified Group, Inc.; SNET Mobility, Inc.; SNET Information Services, Inc.; SNET Personal Vision, Inc.; SNET Advanced Services, Inc.; The Woodbury Telephone Company; and SBC Telecom, Inc. (SBCTI–SNET). (JS ¶ 14.)

*Ameritech Region:* Ameritech Advanced Data Services of Illinois, Inc.; Ameritech Capital Services; Ameritech Communications, Inc. (Management); Ameritech Corporation; SBC Global Services, Inc. (f/k/a) Ameritech Information Systems, Inc.; Ameritech New Media, Ameritech Services, Inc., Illinois Bell Telephone Company; Indiana Bell Telephone Company, Inc.; Michigan Bell Telephone Company; The Ohio Bell Telephone Company; Wisconsin Bell, Inc.; and SBC Datacomm, Inc. (JS ¶ 17.)

*The Benefits and Intended Beneficiaries of Concession*

The amounts paid to eligible OOR Retirees (per region) were as follows:

*Southwestern Bell Telephone Company:* Pre-divestiture retirees, those who retired prior to January 1, 1984, received 100% concession on Local Exchange Service and other enumerated services and 100%, up to $30, on inter and intra-LATA service (Pl. Ex. 100); post-divestiture retirees who established phone service before January 1, 1996 received a fixed amount above $123.51 per quarter. (Tr. 319.)

*Pacific Telesis Group:* Pre-divestiture retirees received 100% of local services and 100%, up to $20, on inter and intra-LATA service. Post-divestiture retirees who retired after December 31, 1983 and before January 1, 1999 received quarterly payments of $116.34 ($38.78 per month). (Pl. Ex. 244.) Post-divestiture retirees who retired on or after January, 1, 1999 and had established service before that date received a fixed amount of $116.34 per quarter if they had thirty-plus years of service (prior to December 31, 2000); otherwise, these retirees received a fixed amount of $22.62 per quarter ($7.54 per month). *Id.*

*Southern New England Telephone:* Pre-divestiture retirees received $30 per month; post-divestiture retirees who retired on or after January 1, 1984 and on or before May 31, 1993 received $15 per month. (Tr. 285–86; 287–88.)

*Ameritech:* Pre-divesture retirees and post-divestiture retirees received 100% of local and other enumerated services, up to $75 per month. (Tr. 267–68.)

Not all retirees were eligible for benefits. Each region required that retirees either retire with a Service Pension or Disability Pension or meet the age and service requirements (i.e. the Rule of 75 or Modified Rule of 75). (*See, e.g.,* Tr. 238, 267, 286; Pl. Ex. 52 (explaining requirement with respect to Pacific Bell); Tr. 286, 301 (explaining requirement with regard to SBC East); Tr. 317–18 (explaining requirement with respect to SBC Southwest).) In addition, each retiree was required to have phone service and to be located OOR. (Tr. 607–08.) [2]

As demonstrated by the formulas discussed *supra,* the benefits and class of beneficiaries was clearly ascertainable. Indeed, Acordia National n/k/a Wells Fargo Insurance Services of West Virginia, the third party administrator of the "Retired Employee Telephone Concession," (Pl. Ex. 17 at SBC 0024755–811; JS ¶ 13;

Tr. 197–99), was able to ascertain the eligible class of beneficiaries and their intended benefits. Depending on at which SBC subsidiary a retiree had previously worked, Acordia was able to calculate the benefits for which that retiree was eligible. (Tr. 190–93.) Jennings Hart, a representative of Acordia, testified that "SBC contracted with us to make eligibility determinations." (Tr. 186.) Hart further testified that SBC provided Acordia with a document entitled "Out-of-area Concession Eligibility Rules," which was "basically a summary of the eligibility rules as SBC wanted us to enforce them." (Tr. 187.) Based on these rules, Hart was "able to determine the amount concession-eligible persons were eligible to receive on a monthly or a quarterly basis." (Tr. 196.) [3]

The Court is unconvinced by Defendant's suggestions that because the plan was changed over time, the benefits were not ascertainable. Though Defendant's witnesses testified that the benefits changed over time, the weight of the evidence on this issue favors Plaintiffs. The fact that Defendant was able to contract with a third-party administrator to distribute the benefits clearly indicates that the benefits were ascertainable. Moreover, both Plaintiffs' expert witness, Ian Altman, and Defendant's actuary stated that they

**2.** The Court rejects Defendant's contention that "Eligibility for OOR Reimbursements was dependent upon out-of-region residence, not age or retirement status." (Def.'s Summary of Trial Evidence.) Essentially, Defendant contends that because OOR employees received some form of reimbursement for telephone services, they received Concession. This Court holds that the OOR Retiree Concession is separate from active employee telephone reimbursements. Therefore, OOR employee receipt of reimbursement for phone services is simply irrelevant to the analysis of OOR Retiree Concession, which was only available upon retirement, and upon fulfillment of certain other requirements. *See Cent. Laborer's Pension Fund v. Heinz,* 541 U.S.

739, 743, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004) (holding that conditions could be placed upon receipt of an ERISA pension plan if those conditions were in place when employees entered into the contract establishing their plan).

**3.** In addition, various versions of "Telephone Concession Highlights for Residential Service" (*see, e.g.,* Pl. Ex. 55 at SBC 1090–99, Pl. Ex. 52 at SBC 1112–1122, Pl. Ex. 54 at SBC 1100–11, and Pl. Ex. 51 at SBC 1123–42) and Regional concession policy documents (*see e.g.,* Operating Practice 72, Pl. Ex. 89 at SBC 777–809, for the Southwest and System Instructions 25, Pl. Ex. 92 at SBC 860–913, for the West) explain OOR Retiree benefits.

could calculate the value of Concession. (*See* Tr. 384, 410.) In addition, a document from Ameritech—where all Concession was percentage-based—concludes: "Retirees outside the service territory are provided with a known and measurable cash benefit." (Pl. Ex. 183 at SBC 22385–90.)

The Court is similarly unconvinced by Defendant's insistence that because a reservation of rights clause was attached to Concession the benefits are not ascertainable. Similar clauses providing that an employer may alter a plan at will are included in documents that Defendant concedes are clearly pension plans covered by ERISA. (*See, e.g.,* Pl. Ex. 128 (pension plan containing reservation of rights clause).) Therefore, the presence of these clauses is inapposite in determining whether the benefits provided by Concession were ascertainable and whether Concession is a pension plan under ERISA.

*Purpose of Concession*

As with most issues in this case, Plaintiffs and Defendant vigorously contest the purpose of Concession. Defendant has offered the testimony of various individuals in support of its contention that Concession was provided (1) in order to maintain contact with employees/retirees; (2) so that employees could be ambassadors for Defendant and its product; (3) for parity for OOR retirees; and (4) to promote goodwill. Plaintiffs insist that the purpose of Concession was to provide retirement income to OOR retirees. The Court finds that Defendant and Plaintiffs arguments are not mutually exclusive—at least one of the purposes of Concession was to provide retirement income, though it may also have been initiated to create goodwill.

When asked what the purpose of Concession was, Defendant's representatives gave varying answers.[4] Gwen Melvin–Neloms testified that Concession was simply a "fringe benefit." (Tr. 249.) Carol Winstead, Defendant's methods and procedures manager, initially testified that the purpose of Concession was to make retirees "ambassador[s] for the company for marketing purposes to use our products." (Tr. 272.) Upon further questioning, Winstead conceded that this explanation did not apply to Concession because retirees were provided with money, not services. *Id.* Rebecca Poe, Defendant's Director of Labor Relations, testified that the sole reason for providing Concession was "good will." (Tr. 328.) Karen Jennings, senior vice-president of human resources, also stated that the only purpose of Concession

4. The Court notes that Defendant repeatedly urges in its Summary of Evidence (Docket No. 312, Ex. A) that the purpose of Concession was to facilitate contact between the company and its employees in instances where the company would need the employees for emergency maintenance. In terms of OOR retirees, this explanation is unconvincing on two grounds. First, while AT & T may have needed to encourage employees to get telephone service in the early days of the company, for at least the last three decades, phone service has become widely available. Second, Defendant did not need to contact retirees, who by definition are no longer employed at the company, in order to perform emergency duties.

In addition, Defendant urges that the purpose of Concession was to encourage Defendant's employees to report service problems. This explanation is similarly inconsistent with the factual situation of OOR retirees. The OOR Retiree Concession provided OOR retirees with money, not Defendant's services. OOR retirees would have no knowledge of service problems. Defendant's insistence that Concession helped advertise AT & T's service is similarly illogical—paying money to retirees who obtained phone services from AT & T's competitors clearly did not help AT & T advertise its services. Defendant's explanations for Concession presume that the active employee telephone discount and OOR retiree concession are part of the same plan. As already stated, the Court finds otherwise.

was goodwill. (Tr. 693.) Norma Gonzalez, executive director of human resources, testified that she understood the purpose of Concession was to provide "value" to retirees. (Tr. 494–95.) Gary Fraundorfer, vice-president of human resources testified that Concession was provided to treat OOR retirees equitably. (Tr. 607.) Several witnesses testified that Concession was designed to reimburse OOR retirees for phone service. (See, e.g., Tr. 678, 227, 234, 260.)

The Court finds that Concession provided retirement income and, in so doing, promoted good will. While AT & T may have initiated Concession in the 1920s as an attempt to treat OOR Retirees and in-service retirees equitably, Defendant provided OOR retirees with something substantially different than it did retirees within service regions. Defendant provided OOR retirees with regular income during their retirement; OOR retirees did not receive an in-kind discount, but rather cash payments. Defendant even admits that its provision of cash discount to OOR retirees was distinct from its provision of discounted services to in-region employees and retirees. (Pl. Ex. 397, Tr. 492.)

The Court is unconvinced by Defendant's documents from the RBOCs indicating that Concession was not a retirement benefit because the RBOC's sought to reserve the right to alter it. (Def.'s Ex. 27, 28, 35, 39.) These documents, in summary, provide that the RBOCs attempted to limit Concession from providing any contractual rights or vested benefits. Id. The documents manifest an intent from the RBOCs that Concession not to be governed by ERISA but do not address the dispositive issue of whether Concession was intended to provide retirement income. Defendant's mistaken belief that Concession would not be governed by ERISA docs not mean that Concession does not meet all the requirements, including an intent to provide retirement income, that effectuate ERISA protection. Moreover, the RBOCs have not even been consistent in their claim that Concession is not a retirement benefit, to the contrary, they argued before the Public Utility Commissions that Concession was a retirement benefit. (See, e.g., Pl.Ex. 116.)

Contrary to Defendant's urgings, Defendant and its predecessors repeatedly indicated that Concession was intended to provide retirement income. AT & T and the RBOCs made representations that led Plaintiffs to reasonably believe that Concession constituted a part of their benefit package and retirement income. Concession was included in information provided to Plaintiffs about their benefits. (Pl. Ex. 37.) While it was listed in the "Other retirement benefits" section of the pamphlet provided to Plaintiffs, it was the only benefit that resulted in regular payments starting at retirement. Id. In addition, Plaintiffs received W–2s for the payments, which indicates that the payments were considered income. (See Plaintiff's W2s, 2001–2005, Pl. Ex. 29 at Dunn 19–20, Pl. Ex. 30 at Giuliani 26–30, Pl. Ex. 42 at Villafane 14–18. Pl. Ex. 36 at Stoffels–3.) Moreover, pre-divestiture, Concession was considered "a long-standing employee benefit" and has been included in the description of benefits provided to employees and retirees. (See Letter re: "Employee Concession Service: Changes resulting from 1983 bargaining," dated August 26, 1983, Pl. Ex. 166 at SBC 13351; Your Retirement Guide–Service Pension Information for Non–Salaried Employees/Pacific Telesis, dated March 1997, Pl. Ex. 61 at SBC 578–638.)

The Court finds that Concession was clearly designed to provide cash payments to OOR retirees once they had retired and met the Rule of 75. Concession was therefore intended to provide retirement income.

*SBC's Maintenance of Concession*

The Court finds, as a matter of fact, that Defendant maintained Concession. The Court bases this finding on the Acordia–SBC Agreement, SBC's instructions and payment to Acordia regarding administration of Concession, testimony regarding SBC's control over Concession, and documents provided to OOR Retirees indicating that SBC controlled Concession.

Defendant contracted with Acordia to administer Concession. The contract states that "SBC maintains the Retired Employee Telephone Concession" and that SBC "retains ultimate responsibility for" Concession. (Pl. Ex. 17.) The SBC–Acordia Agreement assigned the following additional functions to SBC: approval of the terms of the plan, contact for claims for the third-party administrator, and approval of payment of such claims. Prior to 2000, Acordia had individual contracts with Pacific Bell, Southwestern Bell, Ameritech, and Southern New England Telephone. (Tr. 176–77.) After 2000, however, Acordia had only one contract with SBC. That contract was signed by Judey Stallard, then the director of human resources. (Tr. 578.) She received authority to sign the contract from Karen Jennings. (Tr. 578.) After 2000, Acordia's sole contact with regard to the administration of Concession was Gwen Melvin–Neloms, an employee of SBC. (Tr. 177–78.)

SBC and Acordia held a meeting in 2000 (discussed in greater detail *infra*). During the meeting, SBC sought to establish "one consolidated tax policy" for Concession (Tr. 179) and instructed Acordia to issue W–2 forms to recipients of Concession. (*See, e.g.,* Pl. Ex. 42.) Finally, SBC funded Concession through an SBC account. (Tr. 209.) Jennings Hart, a representative of Acordia National n/k/a Wells Fargo Insurance Services of West Virginia, testified that Acordia would "notify [SBC] on some regular basis as to the amount that we were disbursing, and they would provide adequate funds to ensure . . . the account was funded." (Tr. 209; *see also* Tr. 247 ("SBC continually funds the bank account for Acordia to issue reimbursements.");[5] Pl. Ex. 334 (describing how SBC funds Concession).)

Trial testimony conclusively demonstrates that Defendant and its employees had ultimate control over and responsibility for Concession. Karen Jennings, an SBC Officer and Senior Vice–President of Human Resources, testified that she had to approve any change in Concession policy. (Tr. 444.) Jennings further testified that she approved the 2003 and 2005 modifications to Concession. (Tr. 444, 465.) SBC's employees were also responsible for administration of Concession. Melvin–Nelom's supervisor, Lynn Bailey, "had responsibility for the administration of telephone concession across the enterprise." (Tr. 248.) Rebecca Poe, the Defendant's Director of Labor Relations, testified that Melvin–Neloms was responsible for the oversight of all the telephone concession policies for all the regions." (Tr. 322.) SBC's Chairman, Ed Whitacre, also approved modifications to Concession, and the evidence suggests that Defendant's staff would not implement modification without his approval. According to an email regarding the proposed 2004 modification to OOR retiree Concession from Executive Director Norma Gonzalez, human resources staff was "[a]waiting a final decision on the OOR retiree situation from

---

5. The Court recognizes that Betsey Grimm, corporate manager of reporting for SBC, testified that SBC was reimbursed for the costs of Concession by its subsidiaries (*see* Tr. 720), but the Court finds that mere reimbursement does not establish that the subsidiaries maintained Concession, and the weight of the evidence indicates that SBC maintained the Concession.

Karen [Jennings] and Mr. Whitacre." (Pl. Ex. 358 at SBC 32870; *see also* Pl. Ex. 300.)

Finally, SBC's communications with OOR retirees demonstrate that SBC maintained Concession. SBC distributed various booklets to the employees of the SBC Companies addressing retirement benefits, including multiple versions of "Where to go for More Info" (*see, e.g.*, Pl. Ex. 72 at SBC 43433). "SBC Services"—not the individual SBC Company or even the regional company that employed the potentially eligible employee or retiree—is listed on the cover. (*Id.*; *see also* Tr. 296–97, 637–38, 655.) By 2003, "only the SBC brand logo [was] to remain on the [web]site for concessions[,]" and the names of "the bell companies" [i.e. Southwestern Bell, Pacific Bell, SNET and Ameritech,] were deleted. (Pl. Ex. 327 at SBC 42721–33.) In addition, SBC refers Out–of–Service Area retirees eligible for OOR Retiree Concession to Acordia National, regardless for which SBC Company the retiree worked. (*See* Pl. Ex. 50 at SBC 1058–72 (Ameritech); Pl. Ex. 55 at SBC 1090 99 (SWBT); Pl. Ex. 54 at SBC 1100–11 (SNET); Pl. Ex. 52 at SBC 1112–22 (Pacific Bell); Pl. Ex. 59 SBC 639–92 ("My Retirement Guide"); *see also* Tr. 304, 320.)

*Concession Is Distinct from Other Telephone Discounts*

Over the course of numerous filings, Defendant and Plaintiffs have vigorously disputed whether Concession should be analyzed separately from telephone discounts available to current employees. The Court finds as a matter of fact that Concession was structured separately from other segments of the telephone discount and should be analyzed as a distinct plan. SBC consolidated the concessions offered retirees by the RBOC's and hired Acordia to administer Concession. Concession was also separate from telephone discounts offered to active employees.

Following its acquisition of other telephone companies, SBC began consolidating the various programs providing OOR Retiree Concession and creating a uniform policy across the regions. (Tr. 177–78); (*see also* Email from Gwen Melvin–Neloms to J. Hart dated March 7, 2000 attaching agenda for Concession Administration Meeting March 9, 2000, Pl.Ex. 224 at Acordia 49, SBC 48528–29.) As part of this consolidation, SBC hired a third party administrator, Acordia National, for the sole purpose of administering Concession. (Pl. Ex. 224.) SBC held a "Telephone Concession Administration Meeting" with Acordia National in March 2000. *Id.* The agenda for this meeting included "Contract consolidation" of services for all SBC affiliate regions. *Id.* The agenda also included a discussion of how Acordia should calculate eligibility for each of the regions. *Id.* As noted *supra*, SBC also sought to adopt "one consolidated tax policy" for the different programs. In addition, SBC created a single document, the "Out of Area Concession Eligibility Rules" by which Acordia applied data supplied by SBC to determine eligibility for OOR Retiree Concession. (Pl. Ex. 47 at SBC 48533–48.) In accordance with SBC's consolidation of OOR Retiree concessions offered by each RBOC, the term "OOR Concession plan" was used specifically to "refer to the cash reimbursements that out of region/out-of-franchise retirees were receiving." (Tr. 465.) In correspondence with retirees, Gwen Melvin–Neloms was sometimes referred to as the OOR Concession Director. (Tr. 432.[6])

**6.** Defendant ceased using this title for Melvin–Neloms in response to what they referred to as "that blankety-blank lawsuit." (Pl. Ex. 445.) The Court finds that such a semantic alteration does not change the factual reality that Melvin–Neloms was the OOR Concession Director and that this title weighs in favor of

The administration of Concession was separate from the administration of active employee telephone discounts. Acordia's only duty was to administer Concession. (*See, e.g.*, Testimony of Gwen Melvin–Neloms. Tr. 241) (agreeing that Acordia only "handled retirees that lived either outside the region or outside the service area".) Call centers that handled inquiries from active employees regarding telephone discount did not deal with OOR retirees. *See id.* Active employee telephone discounts were often handled by regional offices. For example, Caroline Winstead testified that the process retirees followed for obtaining Concession was different from the process followed by active employees seeking to obtain a discount. (Tr. 293–94.) In distributing Concession, Acordia followed set formulas. *Id.* Discount telephone services for active employees, however, was often left to the discretion of the regional supervisors. *Id.*

Norma Gonzalez, Defendant's Executive Director of Human Resources, testified in her deposition that she believed Concession was separate from telephone discounts available to active employees. When asked "you consider in your mind a plan that provides benefits to OOR separate from a plan that provides benefits to in-service retirees," she responded, "I personally saw them as different." (Tr. 483.) Ms. Gonzalez attempted to backtrack from this testimony during trial and instead stated that Concession and telephone discounts for employees were based on the same policy. (Tr. 481.) Upon viewing the witness at trial and viewing the taped deposition, the Court is unconvinced by Ms. Gonzalez' trial contradiction of her earlier deposition testimony and credits her deposition testimony.

considering the OOR Concession as a separate program.

Based on the weight of the credible evidence, the Court finds that Concession is distinct from any discount services offered to active employees and must be analyzed separately.

### Conclusions of Law

### I. OOR Retiree Concession Meets the Elements of a Pension Plan

■ ERISA defines an "employee pension benefit" plan as (1) any plan, fund, or program, (2) which was heretofore or is hereafter established or maintained by an employer, (3) to the extent that by its express terms or as a result of surrounding circumstances such plan either (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A).

### A. The Concession Plan is a "plan, fund, or program" [7]

■ In order to show that the Concession is a "plan, fund, or program," plaintiffs must show that "from the surrounding circumstances a reasonable person can ascertain [1] the intended benefits, [2] a class of beneficiaries, [3] the source of financing, and [4] the procedures for receiving the benefits." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240–41 (5th Cir.1990). In determining the existence of a plan, fund, or program, courts consider the information from the point of view of a reasonable person. *See Donovan*, 688 F.2d at 1373. Moreover, courts have recognized that "[i]nformation about a plan's essential components may derive from various sources because no single act in itself necessarily constitutes the establishment of the plan, fund, or

7. The advisory jury found that Concession is a plan for the purposes of ERISA. That finding is amply supported by the evidence.

program." *Stefansson v. Equitable Life Assurance Soc'y*, No. 5:04cv40, 2005 WL 2277486, at *6 (M.D.Ga. Sept. 19, 2005) (citation omitted).

### i. The Intended Benefits

The intended benefits of a plan are ascertainable if there is a "discern[able] formula" or a "method by which to calculate[d] the ... payment." *Robertson v. Rubbermaid, Inc.*, No. IP99–0307–C–M/S, 2000 WL 33309371, at *6–7 (S.D.Ind. Mar. 31, 2000) (quoting *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811–12 (7th Cir.1994)). (Jury Inst. at 6.) A benefit expressed in a flat dollar amount "clearly satisfies" the requirement of an "ascertainable benefit." *Musmeci v. Schwegmann Giant Super Mkts.*, 159 F.Supp.2d 329, 346 (E.D.La.2001) (finding benefits of $216 per month in grocery vouchers and $305 per month in cash were both ascertainable). In this case, post-divestiture retirees in the West and Southwest regions received fixed dollars paid quarterly, and in the East, a fixed amount of concession was paid to all OOR retirees per month. *See supra* 6–7. For these OOR Retirees, who received concession benefit as a flat dollar amount, the intended benefits are ascertainable.

Benefits expressed as a percentage are also ascertainable. *See e.g., Davis v. Reliance Standard Life Ins. Co.*, No. 3–03–CV–2535–BD, 2004 WL 1619958, at *3 (N.D.Tex. July 19, 2004) (finding benefits "calculated as a percentage of the employee's monthly earnings" to be ascertainable); *Salameh v. Provident Life & Acc. Ins. Co.*, 23 F.Supp.2d 704, 710 (S.D.Tex. 1998) (finding benefits based on a percentage of salaries was ascertainable). Pre-divestiture retirees in the West and Southwest regions were paid a fixed percentage of their telephone bill—100% of local and inter and intra-LATA toll service (long distance reimbursements were capped),

and all retirees in the Ameritech region received 100% of local service up to $75 per month plus long distance up to a capped amount. *See supra* 6–7. In fact, a document from Ameritech, where all Concession was percentage based, concludes, "Retirees outside the service territory are provided with a known and measurable cash benefit." (Pl. Ex. 183 at SBC 22385.) The most persuasive evidence that intended benefits of the OOR Retiree Concession Plan are ascertainable is "defendant's payment to [plaintiff]." *Moeller v. Bertrang*, 801 F.Supp. 291, 295 (D.S.D.1992) (finding pension plan existed). In this case, for five years a third party administrator, Acordia, was consistently able "to determine the amount" that "concession-eligible persons were eligible to receive." (Tr. 196.)

### ii. Class of Beneficiaries

A "class of beneficiaries" is ascertainable if it is possible to determine the persons "eligible for coverage" or "those persons potentially covered ... under the Plan." *Hutchinson v. Reliastar Life Ins. Co.*, No. 3:06–CV–1122–B ECF, 2007 WL 2687610, at *5 (N.D.Tex. Sept. 12, 2007); *Timmons v. Special Ins. Servs.*, 984 F.Supp. 997, 1003 (E.D.Tex.1997); (Jury Inst. at 7.) The most convincing evidence that it is possible to determine the persons eligible for OOR Retiree Concession is that Acordia was in fact able to apply the eligibility rules in the Defendant's policy documents to the data provided by the company, and thereby, determine which OOR retirees were eligible for concession. (*See* Tr. 185, 190, 196.) It is not only possible to ascertain the class of beneficiaries, the beneficiaries were ascertained.

Throughout this case, Defendant has suggested that the first two elements (ascertainability of benefits and intended persons) are not met because whether

any particular retiree will actually receive any payment and the total amount of such payments cannot be determined at the time of their retirement. These arguments are misplaced. The test for "intended benefits" and "a class of beneficiaries" does not require the provider to determine in advance of entitlement whether any specific person will receive benefits or the amount of those benefits to be received. Rather, these elements are satisfied if, by examining the policy documents, it is possible to determine which persons would be eligible and the amount of benefits to which they would be entitled. *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir.2000) (explaining information available in brochures received by a participant satisfies this inquiry).

■■■ To be ascertainable merely requires criteria allowing those administering a plan to discern the persons eligible and the amount of benefits intended to be paid. *Campbell v. Chevron Phillips Chem. Co., L.P.*, No. 1:05–CV–0273, 2006 WL 2380896, at *7 (E.D.Tex. Aug. 15, 2006) (determining eligible persons sufficiently ascertainable as "outlined in the SPD"); *Lee v. Sun Life Assur. Co. of Canada*, 20 F.Supp.2d 983, 986 (M.D.La.1998) (finding the intended benefits and class of beneficiaries "clearly ascertainable from reading the policy documents"). The eligibility criteria for the OOR Retiree Concession Plan appear in numerous SBC documents including: (1) the "Out–of–Area Concession Eligibility Rules" used by Acordia (the third party administrator of the plan) to administer the plan; (2) the Telephone Concession Highlights, which were posted on the internet for employees and retirees to understand their concession benefit entitlement; (3) regional policy documents (*e.g.* Pl. Ex. 92, Systems Instructions 25 for the West region and Pl. Ex. 89, Operating Practice 72 for the Southwest region); and (4) retirement guides such as Pl. Ex. 58–63, Pl. Ex. 47, and 238 "My Retirement Guide."

### iii & iv. Source of Funding and Procedure for Receiving Benefit

■■■ A source of financing is ascertainable if the benefits are paid from the general funds of the company. It is not necessary for the benefits to come from a separate trust fund in order to prove this element. *Musmeci*, 159 F.Supp.2d at 347–48; *Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir.1991); (Jury Inst. at 7.) A procedure for receiving the benefits is ascertainable where there is an administrative scheme for processing claims and paying benefits. *Musmeci*, 159 F.Supp.2d at 346–47; *Wright*, 927 F.2d at 1544–45, (Jury Inst. at 7.) The procedure does not need to be formal in order to meet this element. *Id.*

On November 29, 2007, the Court provided counsel for both parties the Court's proposed Jury Instructions for the advisory jury and subsequently held an in-chambers conference to hear any objections to the Jury Instructions. (Docket No. 294.) Plaintiffs stated that they had no objections and Defendant stated it incorporated by reference the written objections it filed previously. (Tr. 740.) The Court asked Defendant to read all such objections again, and the Court heard argument and ruled on each objection raised. (Tr. 739–76.) Neither party raised an objection to the instruction entitled "SOURCE OF FINANCING," which stated "Defendant has agreed that the source of financing of the Concession provided to OOR Retirees is ascertainable." (Def. Ex. 294 at 7.) Similarly, neither party objected to the instruction entitled "PROCEDURES FOR RECEIVING BENEFITS," which stated, "Defendant has agreed that the procedure for receiving Concession provided to OOR Retirees is ascertainable." (Def. Ex. 294

at 7.) Accordingly, both these instructions were adopted as part of the Jury Instructions signed by the Court and provided to the Jury on November 30, 2007 before closing arguments. Given that Defendant never raised an objection to these instructions during the conference on November 29, 2007; that Defendant presented no evidence at trial to rebut Plaintiffs' evidence that established the source of funding; and that the procedure for OOR retirees to receive Concession is ascertainable, the Court finds that these two elements of a establishing an ERISA plan have been satisfied.

### B. Defendant Maintained Concession

■■■■ ERISA § 3(2) defines a plan as one that is either established or maintained by an employer. 29 U.S.C. § 1002(2). A company can be liable under ERISA for a pension plan that it did not established at the inception of the plan, if the employer "maintained" the pension plan. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1265 (11th Cir.2004) ("Even if [defendant] did not originally *establish* the plan, ERISA would still apply if the [defendant] subsequently maintained the ... plan."). The following are all indications that an employer maintains a pension plan: involvement in payment of benefits, changing critical terms of the policy, or performing administrative functions associated with maintenance of the plan. *Anderson*, 369 F.3d at 1265; *see also Preite v. Charles of the Ritz Group, Ltd. Pension Plan*, 471 F.Supp.2d 1271, 1281 (M.D.Fla.2006) (finding "a successor corporation" liable where it " 'steps into the shoes' of its predecessor, acquiring all the powers conferred by the plan").

■■■■ SBC maintained the OOR Retiree Concession Plan. The SBC–Acordia Agreement explicitly provides, "WHEREAS, SBC [previously defined as SBC Communications, Inc.] maintains the "Retired Employee Telephone Concession" (hereinafter the 'Program')." (Pl. Ex. 17 at 24759.) Moreover, SBC, through the contract administrator Acordia paid the benefits, controlled the terms of the OOR Retiree Concession, and through its contract with Acordia, administered the OOR Retiree Concession. *See, supra,* pp. 13–14. In addition, as set forth *supra,* changes in plan terms had to be approved by SBC officers.

■■■■ ERISA § 3(5) broadly defines an "employer" to mean "any person acting directly as an employer or indirectly in the interest of an employer, in relation to an employee benefit plan" and "includes a group or association of employers acting for an employer in such a capacity." 29 U.S.C. § 1002(5). Therefore, multiple persons or entities simultaneously can be considered employers under ERISA. In addition to the direct employer, the third-party administrator that approved payment of such claims, "acted at least indirectly in the interest of the [nominal employer] in relation to the plans[.]" *Bannistor v. Ullman,* 287 F.3d 394, 406–07 (5th Cir.2002).

■■■■ Evidence that the "participating companies" in the plan have a corporate relationship to each other and are affiliated with the parent demonstrates a sufficient economic relationship to establish that the parent company is an employer. *Wightman v. Berkley Admin. of Tex., Inc.,* No. Civ. 3:99–CV–1072L, 2000 WL 287930, at *1 (N.D.Tex. Mar. 17, 2000) (concluding that parent company designated as plan sponsor was employer under ERISA); *see Bedinghaus v. Modern Graphic Arts, Inc.,* 782 F.Supp. 604, 606 (M.D.Fla.1992) (concluding parent was employer for employees of subsidiary), rev'd on other grounds, 15 F.3d 1027 (11th Cir.1994). Here, all participating companies are subsidiaries of SBC. (Def. Ex. 253 at 8, 9.)

Defendant set and amended the terms of the OOR Retiree Concession Plan, issued the payment for OOR Retiree Concession (directly or indirectly through Acordia), and had numerous communications with participants regarding policy changes to the plan (e.g., the 2003 modification and the 2005 modification). All of these actions demonstrate that Defendant SBC acted indirectly in the interest of the nominal employers, the SBC Companies. A significant amount of testimony confirmed that all such issues were the responsibility of SBC's designated liaison, Gwen Melvin–Neloms. (Tr. 177, 187, 192, 241, 243–44.) As such, Defendant qualifies as an employer under ERISA § 3(5).

### C. Concession Provided Retirement Income

■■■ ERISA does not define the phrase "retirement income." In the absence of explicit definition, courts "assume that [Congress intended] the ordinary meaning of the words [it] used." *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 236 (5th Cir.2007) (interpreting ERISA). The Court notes that ERISA coverage is to be construed liberally to provide the maximum degree of protection to working people. S. Rep. No. 93–127 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4854.

This Court is guided by the Fifth Circuit's analysis in *Musmeci v. Schweggman Giant Super Markets, Inc.*, 332 F.3d 339 (5th Cir.2003). In *Musmeci*, a class of retirees brought suit against Schweggman because it terminated its grocery voucher plan. 332 F.3d. at 343. Under that plan, retirees received vouchers of $216 per month. *Id.* at 342. These vouchers could be used to purchase groceries at Schweggman grocery stores. *Id.* Schweggman stopped issuing the vouchers after Schweggman grocery stores encountered financial difficulties. *Id.* at 343.

The retirees claimed that Schweggman violated ERISA by terminating their pension benefit plan. *Id.* at 344. The defendants argued that the vouchers did not constitute a plan and therefore were not covered by ERISA. *Id.* The district court found for the plaintiffs, and the Fifth Circuit affirmed. *Id.* The Fifth Circuit held that § 3(2) of ERISA defines a pension plan as a plan, fund, or program that provides retirement income to employees. *Id.* Because the only recipients of the vouchers were retirees, *id.* at 342, the only real issue before the court was whether the vouchers constituted income. Relying on the IRCs definition of income, the Fifth Circuit found that because Schweggman had reported the vouchers as income to the retirees and because that income was taxable, the vouchers constituted "retirement income." *Id.* at 345.

■■■ Following the analysis in *Musmeci*, the Court finds that the trial evidence conclusively proves that Concession provides retirement income. Concession was available to class members only after retirement and upon meeting the requirements of the Rule of 75 or the Modified Rule of 75. *See supra*, p. 8. Like the program in *Musmeci*, Concession was only available to retirees. *Id.* Moreover, like the employer in *Musmeci*, Defendant here clearly considered Concession to be a retirement benefit. Defendant directed its outside actuary, CCA, to account for Concession as any "other retirement benefit" under Financial Accounting Standard 106 ("FAS 106"). (Tr. 413.) While the Court disagrees with Defendant's characterization of Concession as a retirement benefit that falls outside of ERISA, Defendant's own accounting practices indicate that it recognized Concession as income to be received in retirement. *Id.* Moreover, Defendant's witness testified that active em-

ployee phone reimbursements were not accounted for under FAS 106. (Tr. 728.)

The Court notes that Concession is distinct from the plan in *Murphy v. Inexco Oil Company*, 611 F.2d 570 (5th Cir.1980), which the Fifth Circuit held did not provide retirement income. In *Murphy*, the plaintiffs contended that defendant's termination of a bonus plan violated ERISA. 611 F.2d at 573. Under the bonus plan the employer, Inexco, gave bonuses to selected employees by assigning a specific royalty interest in a drilling "prospect," or block of mineral leases. *Id.* at 572–73. The employee was given rights to receive some portion of the proceeds from the prospect, or royalties, when they accrued. *Id.* The assignment of an interest in a prospect was discretionary, based on Inexco management's evaluation of an employee's job performance. *Id.* at 574. Significantly, no assignments were made to retired employees, but employees who received interests continued to own those interests and receive the royalty payments during their retirement. *Id.* The court's description of Inexco bonus program makes clear that any income provided in retirement was purely incidental to the compensation bonus program. *Id.*

Other cases finding that an employer plan does not provide retirement income are similarly inapposite. For example, the plan in *Fraver v. North Carolina Farm Bureau Mutual Insurance Company*, 801 F.2d 675, 678 (4th Cir.1986), provided that an employee would receive payment after termination based on commissions the employee received in the last year before retirement. Those payments could be obtained if the employment contract was terminated prior to retirement. *Id.* Here, Concession is only available to OOR retirees. The plan in *Moore v. Powers*, 279 F.Supp.2d 821 (E.D.Tex.2003) provided payments to active employees at the end of

each calendar year, which is also clearly not the case here.

Concession, unlike Inexco's bonus plan and the other plans discussed above, does not provide retirees with incidental payments. Rather, Concession is conditioned on retirement and meeting certain other requirements. Once those requirements are met, Concession results in fixed regular payments to retirees. *See supra.*

The fact that Concession is only available to retirees who live OOR does not prevent Concession from providing retirement income. Pension plans may have conditions attached to them. As this Court noted in its Order Denying Summary Judgment, the pension plan at issue in *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004), conditioned receipt of retirement income in on retirees refraining from accepting management positions.

**Intent of Concession**

The parties dispute the intent of Concession. Defendant contends that Concession was never intended to provide retirement income, but rather only as a fringe benefit or to create parity between OOR retirees and in-region retirees. Even if Defendant's argument is correct, it does not prevent this Court from finding that Concession provided retirement income.

Defendant contends that because Concession was intended to reimburse OOR retirees for the cost of their phone service, it cannot be considered retirement income. The vouchers in Musmeci were provided to enable retirees to purchase groceries. 332 F.3d at 342–43. Nonetheless, the Fifth Circuit found that the vouchers constituted retirement income for the purpose of ERISA. *Id.* at 345. Recipients of the vouchers were able to purchase groceries and receive an amount of cash equivalent to the unused portion of the vouchers. *Id.* at 343. Similarly, Concession ultimately

resulted in retirees receiving cash that they could use to defray the cost of their phone service or for any other purpose. Defendant also knew that it was providing value to OOR retirees; Gonzalez testified that she "understood that the purpose of Concession was to provide value to retirees." (Tr. 494.)

In *Musmeci v. Schwegmann,* the voucher program was "[p]rompted by a desire to show [the employer's] appreciation to his loyal ... [and] long term employees." 159 F.Supp.2d at 350. The *Musmeci* employer, like Defendant here, considered the program "a gratuity subject to termination at will." *Musmeci,* 332 F.3d at 343. Yet, ERISA's regulations provide that the post-1974 "gratuitous" payments made to retirees are included in the definition of an ERISA pension plan. 29 U.S.C. § 2510.3–2(e).

While Defendant introduced evidence that there was a business purpose to provide the discounts on SBC Services to In–Region employees and retirees, SBC's own corporate representative at trial, Gary Fraundorfer, acknowledged that those purposes did not address why SBC "provide[d] ... reimbursement payments" to OOR retirees. (Tr. 575.) Indeed, vice president Jennings explicitly testified that there was "no business reason to provide Concession to retirees." (Tr. 694.)

As the OOR Retirees did not use SBC telephone services, they could not be "ambassadors for SBC's products and services," so this reason did not apply. (Tr. 328) [8] Nor could Mr. Fraundorfer think of any business reason that SBC would need to contact retired employees to justify concession. (Tr. 651.) The remaining evidence of SBC's motivation in providing these payments were provided as a "fringe

benefit." (Tr. 249, 288, 475), a "goodwill gesture," (Tr. 328, 694), and a "nice thing that the company does not have to do." (Tr. 450, 475). At most, this establishes that the Concession was provided for entirely gratuitous purposes. As in *Musmeci,* this does not prevent the plan from being designed for the purpose of providing retirement income.

Plaintiffs are required to show, by a preponderance of the evidence, that Concession was designed "for the purpose of paying retirement income whether as a result of its express terms or surrounding circumstances." 29 U.S.C. § 1002(2)(A). Plaintiffs have shown that Concession provided retirees with income on a monthly basis, and this income was provided to individuals who had retired and met the requirements of Rule of 75 or the Modified Rule of 75. *See supra,* p. 8. Like the vouchers in *Musmeci,* which intended meant to provide "a supplement to the retiree's monthly income [so] the retiree did not have to use his own money to buy groceries," Concession was intended to defray the cost of phone service so that Plaintiffs did not have to use as much of their own money to buy phone service. Plaintiffs have met their burden of proof.

### Concession Did Not Result in Deferral of Income

■ The Court will adopt the advisory jury's conclusion that Concession did not result in deferral of income. Section 3(2)(A) of ERISA, defining the term "pension plan," specifically distinguishes between a plan, which "provides retirement income to employees" and one which "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."

---

8. Notably, Defendant did not offer Plaintiffs an in-kind service. Such services are services that an employer offers for sale in the regular course of business at a discounted rate. 29

C.F.R. § 2510.3–1. Concession is not an in kind service because Defendant's *competitors,* not Defendant, provided Plaintiffs telephone services.

Like the plaintiffs in *Musmeci,* Plaintiffs have failed to adduce sufficient evidence that Plaintiffs deferred compensation and that Concession provided this compensation. Plaintiffs have failed to show that their wages would have been higher if Concession had been eliminated.

### Defendant's Other Arguments Fail

Defendant offers a number of other loosely constructed arguments as to why Concession. does not fall within the purview of ERISA. These arguments are addressed in turn.

#### i. *Rathbun v. Qwest*

Defendant vociferously argues that this Court should follow the Colorado district court's opinion in *Rathbun v. Qwest,* 458 F.Supp.2d 1238 (D.Col.2006). The facts in *Rathbun* are substantially different from those here. In *Rathbun,* the court found that the OOR retiree Concession and the reimbursements received by active employees who were OOR were part of the same plan. 458 F.Supp.2d at 1250. This Court has found that Concession is separate and distinct from all active employee discounts or reimbursements. It is administered separately and is governed by a distinct set of rules. Moreover, the parties in *Rathbun* agreed that the purpose of the telephone concession program was to make the same benefits available to in-service and out-of-service retirees. *Id.* at 1248. Here, Defendant's witnesses acknowledged that Concession was intended to provide value to OOR Retirees. They also acknowledged that cash reimbursements are distinct from discounted service. Because *Rathbun* is premised on a very different set of facts—namely, that the telephone discount program was one program without distinctive parts and that the purpose for the OOR retiree reimbursements was the same as the purpose for the in-region phone discounts—the court's analysis in *Rathbun* is inapplicable.

■■■ Defendant also suggests that because plaintiffs had a pension plan, Concession could not also be a pension plan. The fact that OOR Retirees participate in another pension plan does not preclude the OOR Retiree Concession from being a pension plan. An employer may maintain more than one pension plan. *Jackson v. Sears, Roebuck & Co.,* 648 F.2d 225, 228 (5th Cir.1981). Not only did the employer in *Musmeci* provide a 401(k) plan in addition to the voucher plan which was determined to be a pension plan, but plaintiffs' expert, Mr. Altman, testified that employers frequently have multiple pension plans. *Musmeci,* 159 F.Supp.2d at 336; *(see also* Tr. 387.)

■■■ The fact that payment of the OOR Retiree Concession may be subject to certain conditions, such as a restriction from moving into a service area, does not prevent it from being a pension plan. "Nothing in ERISA[ ]" prohibits plans from "contain[ing] other terms" or provides that plans with terms based on a contingency "cease to be pension plans." *Modzelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1377 (9th Cir.1994). Indeed, "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511–12, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Income can be retirement income even if it is conditioned upon meeting ongoing requirements. For example, pension benefits may be suspended contingent upon the retiree returning to work under certain circumstances. *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 743, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004). Similarly, the Schwegmann vouchers were inherently conditional upon residing in the New Orleans area (the only place that the Schwegmann stores operated), using them in one of the forty Schweg-

mann stores, and using them within thirty days of issuance. *Musmeci*, 332 F.3d at 342. Despite the conditions on the benefit, the *Musmeci* retirees, like the retirees here, had an unconditional right to the benefit, notwithstanding any conditions placed on the benefits. *See id.* Indeed, ERISA also does not require that pension plans provide payment for life. *E.g.*, *James v. Nat'l Bus. Sys.*, 721 F.Supp. 169, 175 (N.D.Ind.1989) (finding pension plan existed providing for payments for ten years), *rev'd on other grounds*, 924 F.2d 718 (7th Cir.1991); *Tilton v. Radiation Oncologists*, 409 F.Supp.2d 560, 565 (D.Del.2006) (finding deferred compensation agreement requiring payments for a period of four years was a pension plan). Here, the retirees were eligible to receive the OOR Retiree Concession for life so long as they had OOR telephone service and did not move.

▆ The fact that SBC did not intend OOR Retiree Concession to be a pension plan has no bearing on whether it is indeed a pension plan subject to ERISA. *See Carrabba v. Randalls Food Markets, Inc.*, 38 F.Supp.2d 468 (N.D.Tex.1999), *aff'd per curiam*, 252 F.3d 721 (5th Cir.2001), *MDPhysicians & Assoc. v. State Bd. of Ins.*, 957 F.2d 178, 183 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). Whether the "entity that established and maintained the plan intended ERISA to govern the [plan]" is irrelevant as "ERISA protection and coverage turns on whether the [plan] satisfies the statutory definition" and not the parties' intent. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir.1993); *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049 n. 11 (10th Cir.1992) ("If a plan meets the live criteria outlined in *Donovan* it is governed by ERISA whether or not the parties wish to be subject to ERISA."); *Anderson*, 369 F.3d at 1264 (concluding that determination of whether ERISA governs does not turn on whether the employ-er intended the plan to be governed by ERISA but whether it satisfies the statutory definition).

▆ The fact that a plan has a purpose in addition to providing retirement income does not prevent it from being a pension plan. Indeed, ERISA does not mandate that the sole or even primary purpose of a pension plan be that it provides retirement income. See *Matassarin v. Lynch*, 174 F.3d 549, 568 (5th Cir.1999) ("Although the primary purpose of an ESOP differs from that of a pension plan, ESOPs remain subject to ERISA's general protective restrictions and requirements.")

The fact that SBC believed the program was subject to termination at will similarly does not affect the question of whether the OOR Retiree Concession Plan is a pension plan. The employer's belief that the *Musmeci* program was terminable at will did not prevent it from being a pension plan. *Musmeci*, 159 F.Supp.2d at 340 (explaining that once a plan is established, "ERISA entitles an employee to any vested benefits that arise under the plan" and that vested benefits are generally "nonterminable"), *aff'd*, 332 F.3d at 343 (affirming the program was a pension plan even though benefits were considered "subject to termination at will"). As in *Musmeci*, Defendant's belief that a program was terminable at will is not determinative of ERISA's coverage of the plan.

Defendant argues that the reservation of rights provision found in "Where to Go for More Info" (72 at SBC 43444) is evidence that the OOR Retiree Concession was not designed to provide retirement income. As Plaintiffs point out, this argument lacks merit because the same provision governs an uncontroverted pension plan described in the same document. (Tr. 637–40.) The fact that a similar reservation of rights provision can be found in the 11–K for the SBC Savings Plan, which SBC acknowl-

edges is a pension plan, demonstrates that the existence of such a provision does not preclude a finding that the purpose of the OOR Retiree Concession Plan is to provide retirement income. (Pl. Ex. 128.) Indeed, Plaintiffs' expert Ian Altman testified that reservation of rights clauses similar to the one that applies to the OOR Retiree Concession are common in pension plan documents. (Tr. 393.)

 Finally, SBC's non-compliance with ERISA does not absolve it of the requirements imposed by the statute if the OOR Retiree Concession satisfies the statutory elements of a pension plan. ERISA governs an employee pension benefit plan even when the plan fails to comply with all of ERISA's formal administrative and reporting requirements. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985); *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982); *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 679 (8th Cir.2004).

### Phase II Issues Not Relevant to Trial

Defendant contends that to be considered a pension plan, an arrangement must provide an accrued benefit defined in ERISA as an annual benefit commencing at normal retirement age (*see* § 3(23) 29 U.S.C. § 1002(23)) and that the OOR Retiree Concession did not provide such a benefit. The Fifth Circuit, in *Musmeci* only required that the arrangement in question provide retirement income. No further requirement of "accrued benefit" was imposed, and Defendant has not informed the Court nor is the Court aware of any case that has so held.

Defendant contends that the Court cannot find the OOR Retiree Concession to be a pension plan because compliance with ERISA's provisions would be impossible. Impossibility, if it has any application here, is an affirmative defense to compliance with ERISA; it is not an element of the definition of a pension plan. Order Denying Defendant's Motion for Summary Judgment (Def. Ex. 284). Therefore, it should not be considered as part of Phase I, which the court has limited to the question of "whether the 'Telephone Concession' is an ERISA plan." *Id.*